USDC SDNY

DOCUMENT

ELECTRONICALLY FILED

DOC#_____

DATE FILED:  8/13/13____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DANIEL A. CONKLIN AND LISA A. CONKLIN,                    :
                                                         :
                              Plaintiffs,                :
                                                         :
             - against -                                 :
                                                         :
JEFFREY A. MAIDENBAUM, ESQ.,                             :
MAIDENBAUM & ASSOCIATES, P.L.L.C.,                       :
WELTMAN WEINBERG & REIS CO., L.P.A.,                     :
BRANCH BANKING AND TRUST COMPANY,                        :
AMIR CALLOSOL, ESQ., AND                                 :
DENISE PRINCE, ESQ.,                                     :
                                                         :
                              Defendants.                :
-----------------------------------------------------------------------x

**OPINION AND ORDER**
12-CV-3606 (ER)

Ramos, D.J.:

Plaintiffs Daniel A. Conklin and Lisa A. Conklin (collectively, "Plaintiffs") bring this

action against Jeffrey A. Maidenbaum, Esq. ("Maidenbaum"), Maidenbaum & Associates,

P.L.L.C. ("Maidenbaum & Associates"), Weltman Weinberg & Reis Co., L.P.A. ("WWR"),

Amir Callosol, Esq. ("Callosol"), Denise Prince, Esq. ("Prince"), and Branch Banking and Trust

Company ("BBT") (collectively, "Defendants"), alleging violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, fraud in the inducement, legal malpractice,

violation of the New York State Judiciary Law § 487, breach of contract, breach of fiduciary

duty, and breach of duty of good faith.  Doc. 20 ("Am. Compl.").

Before the Court are two separately briefed motions to dismiss Plaintiffs' Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6), one filed by Maidenbaum, Maidenbaum &

Associates, and Callosol (collectively, "the Maidenbaum Defendants"), and the other by WWR

and Prince.  Docs. 22, 25.  For the reasons set forth below, Defendants' motions to dismiss are GRANTED.[1]

## I.    Factual Background

The following facts, which are taken from the Amended Complaint, are assumed to be true for the purposes of this motion.

On November 8, 2005, Plaintiffs and BBT entered into a retail note and security agreement in the amount of $173,700.00, and a deed of trust creating a security interest in a plot of land located in Seawatch at Sunset Harbor, Brunswick County, South Carolina ("Lot 1"). Am. Compl. ¶ 12.  On February 23, 2006, Plaintiffs and BBT entered into a retail note and security agreement in the amount of $171,900.00, and a deed of trust creating a security interest in a second plot of land located in the same development ("Lot 2").  *Id.* ¶ 13.  On December 8, 2007, Plaintiffs and BBT modified the lien on Lot 1 to $173,473.45.  *Id.* ¶ 14.  In or about July 2009, upon information and belief, both Lot 1 and Lot 2 were foreclosed upon, by default, with title vesting in BBT.  *Id.* ¶ 15.

### A.  Allegations Against WWR and Prince Concerning Lot 1

On December 22, 2009, WWR, "as agent for BBT," issued a letter claiming that Plaintiffs owed a balance in the amount of $95,119.43 to BBT for the loan on Lot 1.[2]  *Id.* ¶ 17. Thereafter, WWR and Prince had several telephone conversations with Plaintiffs on their own behalf and on behalf of BBT.  *Id.* ¶ 20.  During these phone conversations, WWR and Prince

---

[1] Although BBT filed an answer and did not join the other defendants' motions to dismiss, the basis for granting moving defendants' motions to dismiss applies equally to all defendants, as discussed *infra*.

[2] On behalf of BBT, WWR hired Maidenbaum to prosecute a separate claim for Lot 2.  Am. Compl. ¶ 18.

allegedly represented themselves as New York licensed attorneys[3] and advised Plaintiffs that they would work for Plaintiffs to secure the best deal in settling the open claim of $95,119.43 on Lot 1. *Id.* ¶ 21. Throughout 2010, Plaintiffs consulted with WWR and Prince about resolving the account with BBT; WWR and Prince undertook negotiations on behalf of Plaintiffs' cause of resolving an alleged debt with BBT associated with Lot 1. *Id.* ¶¶ 22-23. In or about August 2010, WWR and Prince informed Plaintiffs that they "successfully negotiated" with BBT and resolved the Lot 1 claim in exchange for a $36,800.00 payment from Plaintiffs to BBT. *Id.* ¶ 24. WWR and Prince also promised that BBT had agreed to transfer Lot 1 to Plaintiffs and to restore their credit rating. *Id.*

WWR and Prince provided counsel to Plaintiffs and allegedly reassured Plaintiffs, upon their reluctance on paying the sum requested, that the negotiated resolution was a "good deal," in that it would restore Plaintiffs' credit and return Lot 1 to them. *Id.* ¶ 25. As a result, Plaintiffs transferred the demanded sums to WWR and Prince. *Id.* ¶ 26.

In or about February 2010, WWR, "individually and as agent for BBT," began debiting Plaintiffs' bank account, with Plaintiffs' consent, to satisfy the settlement with BBT for Lot 1. *Id.* ¶ 27. On February 26, 2010 and approximately monthly thereafter, WWR debited the following amounts from Plaintiffs' account: $1,000.00 on February 26, 2010; $200.00 on March 26, 2010; $200.00 on April 26, 2010; $200.00 on May 28, 2010; $200.00 on June 30, 2010; $2,000.00 on July 15, 2010; and $33,000.00[4] on August 2, 2010. *Id.*

---

[3] Although not relevant for the purposes of deciding the pending motions, the Court notes that the parties dispute whether Prince is an attorney. *Compare* Am. Compl. ¶ 10 ("Defendant Denise Prince, Esq. at all times relevant hereto was and is an attorney licensed to practice law being employed by [WWR]"), *with* Mem. Law Supp. Defs. WWR and Prince Mot. Dismiss 5, Doc. 27 ("Prince…is not even a lawyer.").

[4] In Plaintiffs' Amended Complaint, the amount of "$33,00.00" was stated to have been debited on August 2, 2010. Am. Compl. ¶ 27. The Court assumes this figure is a typographical error, in which $33,000.00 was the intended amount.

Thereafter, from August 2010 until approximately May 2011, Plaintiffs, WWR, and Prince allegedly communicated bi-weekly regarding the transfer of Lot 1 to the Plaintiffs. *Id.* ¶ 28. During each of these bi-weekly conversations, Plaintiffs claim that WWR and Prince were advised that the title to Lot 1 was not received by Plaintiffs and that there had been "no acknowledgement of a restoration of Plaintiffs' credit." *Id.* ¶ 29. Furthermore, in each telephone call from August 2010 to May 2011, either WWR or Prince allegedly informed Plaintiffs that "the matter was being looked into and that they would resolve the issue." *Id.* WWR and Prince also repeatedly told Plaintiffs that they did not understand why the transaction was not complete, why Lot 1 was not transferred to Plaintiffs, or why the negative credit rating was not removed from Plaintiffs' credit report. *Id.* ¶ 30. WWR and Prince "reaffirmed that they were continuing to work on the matter and would look into it." *Id.*

Plaintiffs allege that WWR and Prince "hid, obfuscated, thwarted, and denied Plaintiffs any information or knowledge about the transfer of Lot 1 and BBT's intentions regarding Plaintiffs' credit." *Id.* ¶ 31. Plaintiffs further allege that WWR and Prince, at all material times, had a duty to disclose this information to Plaintiffs because "they possessed superior knowledge which could not have been ascertained by Plaintiffs through the exercise of reasonable diligence." *Id.* ¶ 32.

In or about April 2011, Plaintiffs contacted "Michelle," the purported supervisor of Prince who also agreed to resolve the transfer. *Id.* ¶ 33. Thereafter, Prince allegedly called the Plaintiffs "cursing and screaming at them for calling her supervisor." *Id.* ¶ 34. Consequently, "Michelle" contacted Plaintiffs and advised that they should contact BBT directly. *Id.* ¶ 35. From April 2011 through June 2011, Plaintiffs contacted BBT and its legal department attempting to resolve the matter. *Id.* ¶ 36.

4

In or about June 2011, BBT advised Plaintiffs that they should retain legal counsel.  *Id.* ¶ 37.  Plaintiffs allege that "as a result of [their] efforts to obtain advice as to the proceeds of the settlement, WWR and Prince gave wrongful advice and counsel so that Plaintiffs could not learn or obtain knowledge about the proceeds."  *Id.* ¶ 38.

### B.  Allegations Against Maidenbaum Defendants Concerning Lot 2

On April 15, 2010, WWR and BBT, "by and through their agents," the Maidenbaum Defendants, "commenced a consumer credit action in the Supreme Court of the State of New York, County of Orange, index 4851-2010, against the Plaintiffs seeking to recover the sum of $82,300.59," the alleged balance owed on Lot 2.  *Id.* ¶ 39.[5]

In or about May 2010, Plaintiffs consulted with the Maidenbaum Defendants and sought to resolve the account with BBT.  *Id.* ¶ 40.  On May 3, 2010 and June 25, 2010, the Maidenbaum Defendants agreed to negotiate with BBT to lower the amount demanded.  *Id.* ¶ 41.  During these conversations, the Maidenbaum Defendants advised Plaintiffs on ways to negotiate with WWR to lower the amount to be paid and negotiated with BBT on Plaintiffs' behalf.  *Id.* ¶ 42.  As a result, Plaintiffs were able to reduce the amount to be paid to WWR.  *Id.* ¶ 42.

Thereafter, the Maidenbaum Defendants represented that they "successfully negotiated" with BBT to resolve the matter for $60,000.00.  *Id.* ¶ 44.  The Maidenbaum Defendants allegedly advised that although they were not able to further lower the amount to be paid to BBT, "the adverse credit reporting associated with this debt would be abated and that Lot 2 would be transferred to Plaintiffs."  *Id.* ¶ 45.  In or about August 2010, Plaintiffs issued a check to BBT in the amount of $60,000.00.  *Id.* ¶ 46.

---

[5] Plaintiffs allege that Maidenbaum and Callosol never disclosed to Plaintiffs that they were the agents for BBT, WWR, and each other and working together to collect on the debt for Lot 2.  *Id.* ¶ 19.  However, the Amended Complaint makes clear that WWR brought the state court action on behalf of BBT.

From August 2010 until June 2011, Plaintiffs continued to communicate approximately bi-weekly with the Maidenbaum Defendants in an attempt to receive the deed to Lot 2 and to restore their credit. *Id.* ¶ 48. Plaintiffs allege that the Maidenbaum Defendants "hid, obfuscated, thwarted, and denied Plaintiffs any information or knowledge about the transfer of Lot 2 and BBT's intentions regarding Plaintiffs' credit." *Id.* ¶ 49. Plaintiffs further allege that the Maidenbaum Defendants, at all material times, had a duty to disclose this information to Plaintiffs because "they possessed superior knowledge which could not have been ascertained by Plaintiffs through the exercise of reasonable diligence." *Id.* ¶ 50.

In each bi-weekly conversation from August 2010 to May 2011, the Maidenbaum Defendants were advised that the title to Lot 2 was not received by Plaintiffs and that there had been no acknowledgement of a restoration of Plaintiffs' credit. *Id.* ¶ 51. Plaintiffs claim to have been advised in each telephone call from August 2010 to May 2011 that the Maidenbaum Defendants were looking into resolving the issues. *Id.* From May 2011 to June 2011, Plaintiffs also had several conversations with BBT concerning the transfer of the property and the restoration of Plaintiffs' credit. *Id.* ¶ 52.

In or about June 2011, BBT advised Plaintiffs that they should retain legal counsel. *Id.* ¶ 53. Plaintiffs allege that "as a result of [their] efforts to obtain advice as to the proceeds of the settlement, [the Maidenbaum Defendants] gave wrongful advice and counsel so that Plaintiffs could not learn or obtain knowledge about the proceeds." *Id.* ¶ 54.

Based on the foregoing facts, Plaintiffs allege, *inter alia*, that on "numerous occasions, in connection with the collection of debts," Defendants and BBT violated the FDCPA, 15 U.S.C. § 1692(d), by having "engaged in conduct the natural consequences of which was to harass, oppress, or abuse the Plaintiffs" ("Count I"), and 15 U.S.C. § 1692(e), by using "false, deceptive,

or misleading representations or means" ("Count II").  *Id.* ¶¶ 65, 68.

## II.   Procedural History

Plaintiffs commenced the instant action on May, 7, 2012, alleging violations of the

FDCPA, fraud in the inducement, malpractice, violation of New York State Judiciary Law,

breach of contract, breach of fiduciary duty, and breach of duty of good faith.  Doc. 1.  On June

27, 2012, the Maidenbaum Defendants requested a pre-motion conference to seek permission to

move to dismiss the complaint on the ground that the sole federal claim is barred by the statute of

limitations, and in the absence of the federal claim, the Court has no subject matter jurisdiction

over the remaining state law claims.  The parties appeared before this Court for a pre-motion

conference on October 18, 2012, at which the Court granted Plaintiffs leave to file an Amended

Complaint.

On November 30, 2012, Plaintiffs filed an Amended Complaint alleging equitable

estoppel and tolling claims, in addition to the seven claims asserted in the original complaint.

Doc. 20.  BBT filed an answer to the Amended Complaint on December 17, 2012.  Doc. 21.  On

December 21, 2012, the Maidenbaum Defendants, WWR, and Prince filed the instant motions,

asserting that the FDCPA claims are time-barred.  Docs. 22, 25.

## III.   Legal Standard

### A.   Motion to Dismiss for Failure to Comply with Statute of Limitations

A motion to dismiss for failure to comply with the statute of limitations is treated as a

motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule

12(b)(6).  *Adams v. Crystal City Marriott Hotel*, No. 02 Civ. 10258 (PKL), 2004 WL 744489, at

*2 (S.D.N.Y. Apr. 6, 2004) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d

Cir. 1989)).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept

as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 and survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

**B.  Equitable Tolling**

Equitable tolling applies to toll a statute of limitations in extraordinary circumstances where plaintiffs show that:  (1) the defendant concealed the existence of plaintiffs' cause of action; (2) plaintiffs remained in ignorance of that cause of action until some length of time within the statutory period before commencement of their action; and (3) plaintiffs' continuing ignorance was not attributable to lack of diligence on their part.  *Sykes v. Mel Harris and Assocs.*, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (citing *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("Equitable tolling applies only in the rare and exceptional circumstance." (internal citations and quotation marks omitted)).  Each of these elements must also be pleaded with

8

particularity.  *See, e.g.*, *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998).

To satisfy the concealment element, plaintiffs must show "either that the affirmative acts of the defendants prevented discovery of plaintiffs' claim or that the wrong itself was self-concealing."  *Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011) (citing *Hendrickson Bros.*, 840 F.2d at 1083).  In order to prove diligence, plaintiffs must "demonstrate reasonable diligence" and "do more than merely inquire as to the status of the investment or simply rely on reassurances by the defendant."  *In re Merrill Lynch Ltd.*, 7 F. Supp. 2d at 274.

Failure of a plaintiff to plead facts to suggest that the defendants sought to conceal these violations or the existence of a cause of action for the violations from the plaintiff, and failure of a plaintiff to plead any facts that he conducted efforts to discover whether the defendants' action violated the FDCPA deprive the plaintiff of any basis for taking advantage of equitable tolling. *Wade v. Rosenthal, Stein & Assocs.*, No. 11 Civ. 5672 (FB) (VVP), 2012 WL 3764291, at *3 (E.D.N.Y. Aug. 29, 2012).  The Second Circuit determined that equitable tolling will be applied "as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights," *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2004) (internal quotations omitted), which means "a situation where a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action."  *Id.* (quoting *Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) (emphasis in original)).

## C. Equitable Estoppel

Equitable estoppel may toll a statute of limitations where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him delay in bringing suit. [6] *Price v. Fox Entm't Group, Inc.*, 473 F. Supp. 2d 446, 455 (S.D.N.Y. 2007) (quoting *Netzer v. Continuity Graphic Assocs.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997) (internal citation and quotation marks omitted)); *Friedman v. Wheat First Sec. Inc.*, 64 F. Supp. 2d 338, 345-46 (S.D.N.Y. 1999) (internal citation omitted). Equitable estoppel applies "only where the plaintiff can show that 'egregious wrongdoing' by a defendant prevented the plaintiff from bringing suit on a claim of which the plaintiff was aware." *Price*, 473 F. Supp. 2d at 455 (quoting *Netzer*, 963 F. Supp. at 1316). Plaintiffs seeking to invoke either equitable tolling or equitable estoppel are required to demonstrate that their ignorance is not attributable to a lack of diligence on their part. *Id.* Moreover, as with equitable tolling, "a plaintiff who unreasonably relies on the reassurances of a wrongdoer has not satisfied this obligation of due diligence." *Id.*

## IV. Discussion

### A. The Plaintiffs' Claims are Untimely

The Maidenbaum Defendants, WWR, and Prince move to dismiss Plaintiffs' claims on the grounds that they are time-barred. An action based on a FDCPA violation must be

---

[6] In their Opposition to Defendants' Motions to Dismiss, Plaintiffs argue that the appropriate test to determine whether equitable estoppel applies is that discussed in *Bild v. Konig*, No. 09 Civ. 5576 (ARR), 2011 WL 666259, at *5 (E.D.N.Y. Feb. 14, 2011). Pls.' Mem. Opp. Mot. Dismiss 8, Doc. 30. That case, which involved breach of contract claims, held that equitable estoppel applies when the plaintiff demonstrates that: (1) the defendants misrepresented some important facts; (2) the plaintiff relied upon the misrepresentation; (3) this reliance caused the plaintiff to delay filing the lawsuit within the applicable limitations period; and (4) the plaintiff, thereafter, commenced the action "within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." *Id.* (internal citations omitted). While this test must be satisfied in order to invoke equitable estoppel, plaintiffs must also be aware that they had a cause of action and actions by defendants caused plaintiffs to delay in bringing their lawsuit. *See, e.g., Friedman v. Wheat First Sec. Inc.*, 64 F. Supp. 2d 338, 345-46 (S.D.N.Y. 1999); *Price v. Fox Entm't Group, Inc.*, 473 F. Supp. 2d 446, 455 (S.D.N.Y. 2007). Therefore, because Plaintiffs fail to allege they were aware they had a cause of action, the analysis and outcome of Plaintiffs' claims are unaffected no matter whether the Court applies the four-factor equitable estoppel test in *Bild*.

commenced "within one year from the date on which the violation occurs" and is limited to alleged activities "in connection with the collection of a debt" or "any debt." *See* 15 U.S.C. § 1692(d)-(e).  Moreover, once a debt is extinguished, there is no debt, and "any action by a former debt-collector, however improper, could not be deemed to be 'in connection' to a present debt collection proceeding." *Puglisi v. Debt Recovery Solutions, LLC*, No. 08 Civ. 5024 (JFB) (WDW), 2010 WL 376628, at *6 (E.D.N.Y. Jan. 26, 2010) (quoting *Posso v. Asta Funding, Inc.*, No. 07 Civ. 4024, 2007 WL 3374400, at *3 (N.D. Ill. Nov. 9, 2007)); *see also Winter v. I.C. System Inc.*, 543 F. Supp. 2d 1210, 1214 (S.D. Cal. 2008) (declining to apply the FDCPA to post-collection activities).

WWR and Prince argue that the one-year limitations period concerning Lot 1 expired on August 2, 2011, one year after the final settlement payment for Lot 1 was debited.  Doc. 27.  Similarly, the Maidenbaum Defendants argue that Plaintiffs' FDCPA claims concerning Lot 2 expired in or about August 2011, one year after Plaintiffs made the $60,000.00 settlement payment for Lot 2.[7]  Doc. 24.

Plaintiffs do not dispute that the foregoing payments extinguished the debts owed to BBT.  In this case, therefore, both debts were terminated, and Plaintiffs' cause of action accrued no later than August 2010.  From that point forward, Defendants were no longer engaged in debt collection activities that can be regulated by the FDCPA because the Plaintiffs paid their debt through settlements for both Lot 1 and Lot 2.  *See Winter*, 543 F. Supp. 2d at 1213 (finding that the FDCPA ceased to regulate the defendants' conduct once the plaintiff paid his debt in full

---

[7] Although Plaintiffs allege that they communicated bi-weekly with WWR and Prince from August 2010 to May 2011 and with Maidenbaum Defendants from August 2010 up to and including June 2011, regarding the restoration of Plaintiffs' credit and the transfer of Lot 1 and Lot 2, respectively, these communications do not extend the FDCPA statute of limitations because they are not "in connection with the collection of debts."  Thus, these alleged communications have no bearing on the FDCPA claims.  *See Winter*, 543 F. Supp. 2d at 1213-14; *Posso*, 2007 WL 3374400, at *3.

because the defendants were no longer engaged in debt collection activities); *see also Posso*,

2007 WL 3374400, at \*3 (stating that "an intervening act such as a settlement has cancelled the

debt and has terminated debt collection process").

Thus, Plaintiffs were required to raise any claims under the FDCPA no later than August

2011, the expiration date of the one-year limitations period.  Since Plaintiffs filed their complaint

on May 7, 2012, absent equitable tolling or equitable estoppel, the claims are untimely.  *See*

*Sykes*, 757 F. Supp. 2d at 422 (finding FDCPA claims subject to equitable tolling); *Price*, 473 F.

Supp. 2d at 455 ("Equitable estoppel or equitable tolling 'can excuse a claimant's failure to

comply with the applicable statute of limitation.'" (internal citations omitted)).

## B. Equitable Tolling does not Apply to Plaintiffs' FDCPA Claims

Plaintiffs argue that the statute of limitations should be tolled because Plaintiffs had bi-

weekly telephone communications with Defendants through May and June 2011, during which

Defendants allegedly falsely assured them that the title to Lot 1 and Lot 2 would be transferred

and that any negative ratings associated with these transactions would be removed from their

credit reports. [8]  Am. Compl. ¶¶ 57-63.  Plaintiffs assert that such continued deceptive and

misleading reassurances about Defendants' continuing efforts to work on behalf of the Plaintiffs

caused them to delay to file a lawsuit.  *Id.* ¶ 63.  Accordingly, they allege that by operation of the

---

[8] While Plaintiffs do not specifically address the doctrine of equitable tolling, which is distinct from equitable estoppel, in their Opposition to Defendants' Motion to Dismiss, they include a section within their Amended Complaint entitled "Plaintiffs' Equitable Estoppel and Equitable Tolling Claims."  Docs. 20, 30.  The Defendants, on the other hand, solely address equitable tolling in their moving papers.  Docs. 24, 27, 31-32.  This Court recognizes that New York federal and state courts have at times used the label "equitable estoppel" to cover both the circumstances where the defendant conceals from the plaintiff the fact that he has a cause of action (*i.e.*, equitable tolling or fraudulent concealment), and where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired (*i.e.*, equitable estoppel).  *See Pearl*, 296 F.3d at 82-83 (internal citations and quotation marks omitted).  However, recent federal case law has clearly distinguished equitable tolling and equitable estoppel as two separate doctrines with an overlapping requirement of demonstrating due diligence on the part of the plaintiffs.  *See, e.g., Price*, 473 F. Supp. 2d at 455.  Thus, although Plaintiffs do not address equitable tolling as distinct from equitable estoppel, this Court will analyze whether either doctrine serves to toll the statute of limitations here.

doctrine of equitable tolling, their complaint was timely when filed on May 7, 2012, less than one year after their last telephone communication with WWR, Prince, and the Maidenbaum Defendants.

Plaintiffs' arguments are unavailing.  In order to prove the concealment element, Plaintiffs must show that Defendants took independent affirmative steps to prevent Plaintiffs' discovery of their claim or that the wrong itself was self-concealing.  *See In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000); *Hendrickson Bros.*, 840 F.2d at 1083. While Plaintiffs contend that Defendants' assurances were knowingly false and fraudulent, Plaintiffs offer no particular facts suggesting that Defendants took affirmative steps to conceal these violations or the existence of a cause of action for these violations from Plaintiffs.

In *Sykes v. Mel Harris and Associates*, the plaintiffs plausibly alleged equitable tolling because they claimed that the defendants used a process service provider that purposely ensured that the party was never served,[9] thereby rendering the party ignorant of the cause of action that was filed against them.  757 F. Supp. 2d at 422.  The Court held that "defendants' acts were 'of such character as to conceal [themselves]' to warrant equitable tolling."  *Id.* (quoting *Bailey v. Grover*, 88 U.S. 343, 349-50 (1874)).  Unlike the defendants in *Sykes*, who used a specific service to ensure that the plaintiffs would remain ignorant of the fact that a cause of action was filed against them, here, Defendants did not actively conceal themselves or the existence of a cause of action.  The Amended Complaint clearly asserts that WWR sent Plaintiffs a letter "as agent for BBT" attempting to collect the amount due on Lot 1, and that Maidenbaum brought

---

[9] In *Sykes*, the plaintiffs used "sewer service," a service through which defendants intentionally fail to serve parties and then often falsely affirm to the court that they had in order to obtain default judgment against a debtor.  *See Sanchez v. Abderrahman*, No. 10 Civ. 3641 (CBA), 2012 WL 1077842, at *1 (E.D.N.Y. Mar. 30, 2012); *see also Bowens v. LR Credit 10, LLC*, No. 07 Civ. 459S, 2011 WL 6208303, at *3 (W.D.N.Y. Dec. 14, 2011) ("[Plaintiff] alleges Defendants violated the FDCPA by engaging in 'sewer service'—the fraudulent service of process on a debtor by a creditor seeking to obtain default judgment." (internal citations omitted)).

suit on behalf of BBT in state court to collect the amount due on Lot 2.  Am. Compl. ¶¶ 17, 39.

Defendants' alleged bi-weekly telephonic assurances also fail to amount to a self-concealing

wrong.  *Cf. Nine West Shoes*, 80 F. Supp. 2d at 193 (finding that particularized allegations of a

price-fixing scheme obviated the requirement to plead "affirmative actions taken by the

defendants to prevent the plaintiff's discovery of its claim.").

       Even if such facts were sufficiently pleaded, Plaintiffs have failed to allege with

sufficient particularity that their claimed ignorance of a cause of action under the FDCPA was

not attributable to lack of diligence.  Plaintiffs only claim that Defendants "had a duty to disclose

th[e] information to Plaintiffs because . . . they possessed superior knowledge which could not

have been ascertained by Plaintiffs through the exercise of reasonable diligence."  Am. Compl.

¶¶ 32, 50.  Plaintiffs relied solely on reassuring statements that Defendants made and thus, were

not sufficiently diligent.  "Merely accepting defendants' reassurances . . . does not constitute

diligent inquiry."  *In re Merrill Lynch Ltd.*, 7 F. Supp. 2d at 275.

       Similar to the plaintiffs in *In re Merrill Lynch*, Plaintiffs "do not even allege that they

made any specific inquiries of defendants, let alone detail when such inquiries were made, to

whom, regarding what, and with what responses."  *Id.*  Even assuming, *arguendo*, that

Defendants engaged in active concealment of information, Plaintiffs were not relieved of their

duty to undertake reasonable inquiry and diligence.  *See In re Integrated Res. Real Estate Ltd.*

*P'ships Sec. Litig.*, 850 F. Supp. 1105, 1123 (S.D.N.Y. 1993) ("Plaintiffs may not rely on

allegations of fraudulent concealment to avoid the limitations bar unless they exercised due

diligence in attempting to ascertain the facts related to the alleged fraud, but were nevertheless

unable or prevented from discovering the nature of their claim." (internal citations and quotation

marks omitted)); *Hinds County., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 499, 518

(S.D.N.Y. 2009) (finding that a brief reference to "reasonable diligence" coupled with general allegations of secrecy and deception directed towards the first prong of fraudulent concealment does not satisfy the plaintiffs' burden under Rule 9(b) to plead the third prong with particularity). Here, the Amended Complaint is bereft of any facts that indicate that Plaintiffs conducted any efforts whatsoever to discover whether Defendants in fact violated the FDCPA, which renders the protection of equitable tolling unavailable to Plaintiffs. *See Wade*, 2012 WL 3764291, at *3 (finding the plaintiff's failure to plead "any facts that he conducted any efforts whatsoever to discover whether [the defendants] violated the FDCPA" deprived him of any basis for utilizing the doctrine of equitable tolling).

Furthermore, in order to invoke this doctrine, "a plaintiff must allege that extraordinary circumstances prevented him from acting in a timely manner." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 158 (E.D.N.Y. 2007) (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). Such extraordinary circumstances exist where "a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action." *Pearl*, 296 F.3d at 85 (quoting *Miller*, 755 F.2d at 24 (emphasis in original)). Here, Plaintiffs have not alleged that it would have been "impossible" for them to learn about their cause of action against BBT, nor could they plausibly do so in light of the fact that they were well aware of BBT's efforts to attempt to collect the amounts due on Lots 1 and 2. Moreover, Plaintiffs' allegations that they reasonably relied on the representations of Defendants—over a period spanning more than ten months and dozens of telephone calls—that provided reassurance that the matter would be resolved to their satisfaction, is insufficient as a matter of law to "demonstrate reasonable diligence." *In re Merrill Lynch Ltd.*, 7 F. Supp. 2d at 274. Thus, Plaintiffs were not prevented in some "extraordinary way" or due to "extraordinary

15

circumstances" from exercising their rights in a timely manner.  Accordingly, Plaintiffs may not rely on the doctrine of equitable tolling to save their FDCPA claims.

### C.  Equitable Estoppel does not Apply to Plaintiffs' FDCPA Claims

Plaintiffs claim that equitable estoppel applies to toll the statute of limitations because they did not become aware of the alleged falsity and fraudulent nature of Defendants' misrepresentation until after BBT advised them in June 2011 to retain legal counsel.  *Id.*  Thus, the doctrine of equitable estoppel is unavailable to Plaintiffs because they do not assert that they were aware of their claims but delayed in bringing suit because of Defendants' misconduct; rather, they assert that they were not aware of their claims.  *See, e.g.*, *Price*, 473 F. Supp. 2d at 455 (finding that equitable estoppel applies only where wrongdoing by a defendant prevented the plaintiff from bringing suit on a claim of which the plaintiff was aware) (internal citations omitted); *Heins v. Potter*, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003) (same); *Friedman*, 64 F. Supp. 2d at 345-46 (same) (internal citations omitted).

Furthermore, even if Plaintiffs had alleged that they were aware of their claims, Plaintiffs' reliance of the doctrine of equitable estoppel would still fail because this doctrine also has a due diligence requirement.  *See Price*, 473 F. Supp. 2d at 455 (quoting *Netzer*, 963 F. Supp. at 1316) ("A plaintiff seeking to invoke [either equitable tolling or equitable estoppel] is also required to demonstrate that his ignorance is not attributable to a lack of diligence on his part."). As discussed above, Plaintiffs' Amended Complaint is devoid of any facts that suggest they exercised reasonable diligence other than simply relying on Defendants' bi-weekly telephonic reassurances.

Because Plaintiffs cannot invoke either equitable tolling or equitable estoppel to excuse their untimely filing, Plaintiffs' causes of action pursuant to the FDCPA are time-barred and must be dismissed.

## V.     Remaining State Law Claims

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims if it has dismissed all of the claims over which it has original jurisdiction. Having dismissed Plaintiffs' federal claims under Rule 12(b)(6) as time-barred, it would be inappropriate to adjudicate their state law claims. *See Griffith-Fenton v. Chase Home Finance*, No. 11 Civ. 4877 (VB), 2012 WL 2866269, at *4 (S.D.N.Y. May 29, 2012). Therefore, all non-federal claims in the Amended Complaint are also hereby dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

## VI.    Conclusion

For the reasons set forth above, Maidenbaum Defendants' and WWR and Prince's motions to dismiss the Amended Complaint are GRANTED.  While Defendant BBT filed an answer and did not join the other defendants in their motions to dismiss, the basis for granting the moving defendants' motions to dismiss Plaintiffs' FDCPA claims on statute of limitations grounds applies equally to all defendants.  Accordingly, the Amended Complaint is dismissed with prejudice as to all defendants.  The Clerk of the Court is respectfully directed to terminate these motions and to close this case.  Docs. 22, 25.


It is SO ORDERED.

Dated:    August 13, 2013
          New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.